IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RONALD DUPREE SIMON, JR., § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | CIVIL ACTION NO. 4:16-cv-03241 |
| § | |
| NANCY A. BERRYHILL, COMMISSIONER OF § | |
| SOCIAL SECURITY ADMINISTRATION § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Plaintiff Ronald Dupree Simon, Jr. (Simon) has filed this case under Social Security Act, 42 §§ 405(g) seeking review of Defendant Nancy A. Berryhill's (Commissioner) decision denying his request for social security benefits. Cross-motions for summary judgment have been filed. Dkts. 12, 13. Defendant has responded. Dkt. 14. After considering the pleadings, the record, and the applicable law, it is **ORDERED** that the Commissioner's Motion be **GRANTED**, and Simon's Motion be **DENIED**.[1]

### I. Background

#### 1. Factual and Administrative History

Simon filed a claim for social security disability insurance and supplemental security income benefits in July, 2013. Dkt. 13-1 at 3; Dkt. 6-6 at 19-31. Simon alleged the onset disability as of July 1, 2013, due to severe hypertension, nose bleeds, a sleep disorder, a heart condition, a kidney condition, and headaches. Dkt. 13-1 at 3; Dkt. 6-7 at 11. At the time of onset, Simon was 44 years old with a high school education and past relevant work as a delivery truck driver. Dkt. 6-3 at 19. His claim was denied on initial review and reconsideration. Simon and a

---

[1] On January 24, 2018, the parties consented to proceed before a United States Magistrate judge for all purposes, including the entry of a final judgment under 28 U.S.C. §636 (c). (Dkt. 15).

vocational expert testified at a hearing on October 2, 2014. *Id.* at 28-50. The administrative law judge (ALJ) issued an unfavorable decision on December 9, 2014. *Id.* at 8-22. The Appeals Council denied review on April 27, 2016, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c).

3

The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* Thus, in order

for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step analysis. The ALJ determined that Simon met the insured status requirements of the Act through December 31, 2016, and that he had not engaged in substantial gainful activity since July 1, 2013, the alleged onset date. Dkt. 6-3 at 13. The ALJ further concluded that Simon had the following severe impairments: "diabetes mellitus II, peripheral neuropathy, chronic back pain, gastroesophageal reflux disease, hypertension, sleep apnea, and morbid obesity," none of which meet or equal a listing. *Id.* at 13, 15. After considering all of the evidence, the ALJ determined that Simon had the residual functional capacity ("RFC") to:

> perform light work [] i.e., to lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently, stand/walk for about 6 hours of an 8 hour workday, and sit at least 2 hours of an 8 hour workday, comprised of the need to alternate with sitting and standing at will during an 8 hour workday; he cannot climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs and balance; can occasionally stoop, kneel, crouch, and crawl; and he uses a cane.

*Id.* at 17. Based on the medical records and the testimony of the vocational expert, Mr. Pettingill, the ALJ determined that Simon is unable to perform his past relevant work as a delivery truck driver. *Id.* at 20. He further found that considering Simon's age, education, work experience, and RFC, Simon is capable of performing jobs such as an office helper, an information clerk, and a parking garage cashier; and that such jobs exist in significant numbers in the national economy. *Id.* at 21. With that, the ALJ concluded that Simon "has not been under a disability, as defined in

[the Act], from July 1, 2013, through the date of this decision," and denied his applications for benefits. *Id.* at 21-22.

## II. Analysis

### 1. Simon's Grounds for Relief

Before this court, Simon alleges that the ALJ erred in assessing his residual functional capacity in two ways: (1) in rejecting the opinions of Dr. Austin Williams, a treating physician; and (2) in failing to rely on medical evidence in making his RFC determination. Dkt. 13-1 at 12-16.

### 2. Residual Functional Capacity Assessment

A claimant's residual functional capacity is his "remaining ability to work despite all of h[is] limitations resulting from h[is] impairment[s]." *Jones v. Astrue*, No. H-09-0656, 2010 WL 1404124, at *10 (S.D. Tex. Mar. 31, 2010) (citing 20 C.F.R. § 404.1545). In evaluating the claimant's RFC, the ALJ must consider how the claimant's impairments affect his physical, mental, and other abilities, as well as the total limiting effects of his impairments. *Id.* The ALJ has the sole responsibility for determining a claimant's RFC based on the record as a whole. *See Villa*, 895 F.2d at 1023-24; 20 C.F.R. § 404.1545(a)(3).

### 2.A. The ALJ Did Not Err in Considering Treating Physician Evidence

A treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton*, 209 F.3d at 455. Nonetheless, the treating physician's opinions are not conclusive. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). When good cause is shown, the ALJ is free to reject, assign less weight, little or even no weight, to the opinion of a treating physician:

> Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, 209 F.3d at 456; *see also Greenspan*, 38 F.3d at 237.

In addition, the ALJ's decision must state reasons for declining to give a treating physician's opinions controlling weight. *Newton*, 209 F.3d at 455. The ALJ considers the following factors when deciding whether good cause exists to discount the opinion of a treating physician: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician. *Id.* However, the ALJ need not recite or discuss each factor in an express, or formulaic fashion to conduct a thorough § 416.927(c) analysis. *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005) ("[T]he adjudicator [need only] 'consider' the factors. Neither the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid mechanical form."). Ultimately, conflicts among the various medical opinions of record are within the purview of the Commissioner – and not the courts – to resolve. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

***Opinion on ultimate disability issue.*** To the extent Simon argues that the ALJ erred in failing to give controlling weight to the opinions of Dr. Williams and Dr. Wagle that Simon was unable to work, his position is without merit. The legal standards described above apply only to medical opinions from treating physicians. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). On March 19, 2014, and June 25, 2014, Dr. Williams submitted responses to a residual functional capacity questionnaire provided by Simon's counsel in which he concluded that

7

Simon is "[in]capable of working an 8 hour day, 5 days a week [] on a sustained basis[.]" Dkt. 6-9 at 77; Dkt. 6-11 at 40. Dr. Wagle submitted a similar, highly conclusory, opinion on October 7, 2013.[3] Dkt. 6-11 at 95. The ALJ afforded no weight to these opinions because findings of disability are reserved for the Commissioner. Dkt. 6-3 at 20. A physician's statement that a claimant is not able to work, is disabled, or has a particular RFC, is not entitled to any special significance, because it is not a medical opinion. *Frank*, 326 F.3d at 620 (citing 20 C.F.R. § 404.1527(e)(1)). The ALJ was correct in holding that whether a claimant is capable of work is a legal conclusion that is reserved to the Commissioner.

***Opinion on functional limitations***. Simon also contends that the ALJ ignored medical opinion evidence from Dr. Williams regarding his functional limitations that supports a conclusion that he is disabled. Dkt. 13-1 at 12-13. Dr. Williams's questionnaire identifies specific limitations, such as Simon's need to take frequent unscheduled breaks, and the likelihood of missing more than four days per month due to his impairments or treatment. Dkt. 6-9 at 76-77; Dkt. 6-11 at 39-40. The ALJ did not reject Dr. Williams's opinions solely on the ground that they regard issues reserved to the Commission. In rejecting Dr. Williams's opinions regarding Simon's functional limitations, the ALJ found that the opinion is "inconsistent with the evidence of record[,]" because "objective testing and physical examinations have been normal or showed minimal abnormality." Dkt. 6-3 at 20. However, the ALJ did not cite specific treatment notes and medical records in connection with this finding. In addition, the ALJ opinion makes no mention of Dr. Williams's specialty or the length, nature, and frequency of his treatment relationship with Simon. *See* Dkt. 6-3 at 19. The court concludes that the ALJ erred in failing to

---

[3] Dr. Wagle's opinion was in connection with Simon's back pain, not hypertension, and noted that the disability was not permanent, although expected to last more than 6 months. Dr. Wagle provided no opinion on specific functional limitations. Dkt. 6-11 at 95.

8

engage in the detailed analysis required by *Newton* before deciding to give no weight to Dr. Williams's opinions in making his RFC determination.

***Harmless error.*** Nevertheless, Simon's claim cannot succeed unless he shows that he was prejudiced by the ALJ's error. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). In social security cases, a claimant establishes prejudice by showing that, absent the error, the ALJ might have reached a different conclusion. *See Newton*, 209 F.3d at 453; *Ripley*, 67 F. 3d at 557 n.22.

Here, it is clear that had the ALJ gone through the detailed evaluation set forth in *Newton*, the ALJ would have reached the same conclusion. The ALJ cited medical evidence and evidence provided in Simon's own written submissions in his discussion of Simon's RFC. For example, the ALJ noted that in July 2013 Dr. Williams reported a normal physical examination and stated Simon's blood pressure was better controlled. Dkt. 6-3 at 18. In September 2013, Simon's blood pressure was 139/94 and his physical examination was unremarkable. *Id.* The ALJ noted similar results in December 2013 and March 2014. *Id.* at 18-19.

In addition, the record shows that Simon met with Dr. Williams only five times over the course of a three-year period for treatment of his hypertension. The infrequency of his visits suggests that Simon's hypertension is not as severe as alleged. While Dr. Williams asserts that Simon's hypertension has been "impossible to control under stress with medications," it was well-controlled at rest. Dkt. 6-9 at 13. Other records establish that Simon's blood pressure was generally brought under control with medication. Dkt. 6-8 at 2-9; Dkt. 6-9 at 38; Dkt. 6-10 at 9. In fact, Simon admitted that he has not been 100% compliant with his blood pressure medication, estimating he is ">75% adherent with the use of medication." Dkt. 6-8 at 16, 47; Dkt. 6-9 at 44, Dkt. 6-10 at 9. Yet, despite his failure to consistently take his medication, Simon has been found

9

to have normal to moderate blood pressure levels on several occasions. *See, e.g.,* Dkt. 6-8 at 3-6, 44-48; Dkt. 6-9 at 59-61, 64-67; Dkt. 6-10 at 4; Dkt. 6-12 at 4. As a rule, conditions that can be controlled by medication are not considered to be "disabling." *Masterson*, 309 F.3d at 272.

The ALJ also noted that Simon's activities of daily living are inconsistent with Dr. Williams's opinion. Dkt. 6-3 at 17-18. In his written function reports Simon reported he is able to watch tv, read books, prepare his own meals, take care of personal hygiene, and go to church. He reported no problems with concentration and following instructions. Dkt. 6-7 at 2-9, 35-42. In his hearing testimony, Simon stated he can care for himself, and he can drive to the store, although he does not go inside to shop by himself. He can lift canned goods, but probably not a gallon of milk. Dkt. 6-3 at 41-42. The ALJ further noted that Simon was terminated from his job due to work performance and attempted to start his own medical transport business but failed due to having too many tickets. Dkt. 6-3 at 18; Dkt. 6-8 at 11.

Having reviewed the record as a whole, the ALJ concluded that the disability opinion offered by Dr. Williams was based on Simon's self-reported symptoms, and not objective testing and physical examinations. Dkt. 6-3 at 20. *See O'Hara v. Colvin*, No. 4:14-CV-03626, 2016 WL 4938004, at *20 (S.D. Tex. Mar. 15, 2016) (The ALJ permissibly concluded that doctor's findings regarding claimant's functional capacity were based on claimant's reported symptoms, and therefore entitled to scant weight). For these reasons, Simon has not shown prejudice from the ALJ's failure to expressly enumerate all relevant factors in conducting his § 416.927(c) analysis of the weight to accord Dr. Williams's opinions.

### 2.B.  ALJ did not improperly rely on lay opinion

Simon also argues that the ALJ based his RFC assessment on his own lay opinion and not on medical evidence. Although the ALJ expressly rejected the disability status opinions from

Simon's treating physicians, Dr. Kamal Wagle and Dr. Austin Williams, it is clear that the ALJ considered the medical records and treatment notes from their examinations of Simon in reaching his decision. *See* Dkt. 6-3 at 18-19. The ALJ also considered the opinion of Dr. Robert Rosenstock that Simon does not have a severe impairment, and the opinion of Dr. Leigh McCary that Simon can perform medium work with no non-exertional limitations. *Id.* at 19. While the ALJ gave little weight to these opinions, he considered them, as well as the record as a whole, in finding that the evidence supports *greater* limitations than found by the two agency consulting physicians. *Id.* (emphasis added). The ALJ also considered evidence regarding Simon's use of a back brace and a cane. *Id.* at 17, 19; Dkt. 6-3 at 48; Dkt. 6-11 at 55. While the ALJ may not have discussed the evidence in the record to the extent desired by Simon, the ALJ is required only to make clear the basis for his assessment. *See O'Hara*, 2016 WL 4938004 at *18.

In sum, the ALJ had good cause to give Dr. Williams's disability opinion no weight because the opinion is not supported by the medical evidence of record and is inconsistent with the record as a whole. There is substantial evidence to support the ALJ's finding that Simon's hypertension is not a disabling impairment for purposes of social security benefits.

### III. <u>Conclusion</u>

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on a reversible error of law. Thus, Simon's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**. Signed at Houston, Texas, on March 7, 2018.

Christina A. Bryan
United States Magistrate Judge